No. 22-56189

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**SERGIO GONZALEZ,** on behalf of
himself and all others similarly situated,

Plaintiff - Appellant,

v.

**COVERALL NORTH AMERICA, INC.,**

Defendant - Appellee.

_____

Appeal from the United States District Court for the Central District of California
Case No. 5:16-cv-02287-JGB-KK – The Honorable Jesus Bernal
_____

## DEFENDANT-APPELLEE COVERALL NORTH AMERICA, INC.'S
## ANSWERING BRIEF
_____

Norman M. Leon                    Julie A. Dunne
**DLA PIPER LLP (US)**             **DLA PIPER LLP (US)**
444 West Lake Street, Suite 900    4365 Executive Drive, Suite 1100
Chicago, Illinois 60606-0089       San Diego, CA 92121-2133
(312) 368-4000                     (858) 677-1400

                                   *Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................1

JURISDICTIONAL STATEMENT ......................................2

STATEMENT OF ISSUES ......................................4

STATEMENT OF THE CASE ......................................5

    **A.**   The Parties ......................................5

    **B.**   Plaintiff's Complaint and Coverall's Motion to Compel Arbitration ......................................8

    **C.**   Plaintiff's First Attempt To Manufacture Appellate Jurisdiction ........9

    **D.**   Plaintiff's Alleged Efforts to Arbitrate ..............................11

    **E.**   The Dismissal of Plaintiff's First Appeal..........................15

    **F.**   Plaintiff's Renewed Motion to Reopen the Case and the Second Appeal..........................16

    **G.**   Reconsideration of The Second Motion to Reopen and the Third Appeal..........................19

SUMMARY OF THE ARGUMENT ......................................21

STANDARD OF REVIEW ......................................25

ARGUMENT ......................................26

**I.**   This Court Lacks Jurisdiction Over This Appeal ......................................26

    **A.**   Because This Court Has Already Concluded It Lacked Jurisdiction Over the Order Dismissing Plaintiff's Claims Without Prejudice, It Necessarily Lacks Jurisdiction Over This Appeal..........................26

    **B.**   No Injustice Will Come from the Dismissal of this Appeal .............30

**II.**   This Court's Decision In *Henson* Does Not Apply Here ...........................33

    **A.**   The District Court Lacked Jurisdiction to Consider Plaintiff's Second Rule 60(b) Motion, Which Never Raised an Alleged Change in the Governing Law as Grounds for Relief......................33

    **B.**   There Was No Change in The Governing Law..................................36

**III.**  The District Court Did Not Abuse Its Discretion in Concluding That the *Henson* Factors Did Not Support Reconsideration ...............................41

    **A.**   None of the *Henson* Factors Overcome the Fact There Was No Change in the Law..........................41

i

## TABLE OF CONTENTS

**Page**

1. *The Change in the Law* ............................................................. 41

2. *Plaintiff's Diligence in Pursuing Relief* ................................. 44

3. *Reliance Interest in the Finality of the Case* ......................... 45

4. *Delay Between the Judgment and the Rule 60(b) Motion* ....... 46

5. *The Relationship Between the Original Judgment and the Change in the Law* ................................................................. 46

6. *Concerns of Comity* .............................................................. 48

B. The District Court Properly Concluded That No Additional Considerations Supported Granting Plaintiff's Motion ................... 48

CONCLUSION ............................................................................... 50

STATEMENT OF RELATED CASES .............................................. 52

# TABLE OF AUTHORITIES

**Page**

CASES

*Aleck v. U.S.*,
No. 97-35103, 1998 WL 790009 (9th Cir. Nov. 5, 1998) ............................27, 29

*Apple Inc. v. Samsung Electronics Co. Ltd.*,
No. 11-CV-01846-LHK, 2017 WL 4776443
(N.D. Cal. Oct. 22, 2017) .......................................................................................38

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986)................................................................................................25

*Berger v. Home Depot USA, Inc*.,
741 F.3d 1061 (9th Cir. 2014) ...............................................................................34

*Billie v. Coverall N. Am., Inc.*,
No. 22-718-cv, 2023 WL 2531396 (2nd Cir. Mar. 15, 2023) ...............14, 15, 31

*Black Patients Matter v. Kirchmeyer*,
No. CV19-03056PA(JCx), 2020 WL 1972576
(C.D. Cal. Jan. 16, 2020) .............................................................................2, 26, 35

*Borgarding v. JP Morgan Chase Bank*,
No. CV 16–2485 FMO (RAOx), 2016 WL 8904413
(C.D. Cal. Oct. 31, 2016) .......................................................................................14

*Bowers v. Whitman*,
671 F.3d 905 (9th Cir. 2012) ................................................................................36

*Brandao v. Jan-Pro Franchising Int'l, Inc.*,
124 N.E.3d 159, 2019 WL 1244627 (Mass. App. Ct. Mar. 18, 2019) ...............13

*Buckley v. BMW of N. Am.*,
No. 20-56397, 2022 WL 16756341 (9th Cir. Nov. 8, 2022) ..............................27

*Burwell v. Hobby Lobby Stores, Inc*.,
573 U.S. 682 (2014) (Ginsburg, J., dissenting) ...................................................39

*Bynoe v. Baca*,
966 F.3d 972 (9th Cir. 2020) ................................................................................47

# TABLE OF AUTHORITIES

**Page**

*Bynum v. Maplebear Inc.*,
  698 F. App'x 23 (2d Cir. 2017) ...........................................................47

*Cobbledick v. U.S.*,
  309 U.S. 323 (1940)............................................................................21

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ......................................................passim

*Corn v. Guam Coral Co.*,
  318 F.2d 622 (9th Cir. 1963) .............................................................35

*Defenders of Wildlife v. Bernal*,
  204 F.3d 920 (9th Cir. 2000) .............................................................26

*Dejeu v. Washington State Dep't of Labor & Indus.*,
  623 F. App'x 901 (9th Cir. 2015) .........................................................3

*Digicomo v. Ex'pression Ctr. for New Media, Inc.*,
  No. C 08-01768 MHP, 2008 WL 4239830 (N.D. Cal. Sept. 15, 2008) .............14

*Dynamex Operations W. v. Superior Court*,
  4 Cal. 5th 903 (2018) ..........................................................................8

*Ege v. Express Messenger Systems, Inc.*,
  No. 2:16-CV-1167-RSL, 2019 WL 6701342
  (W.D. Wash. Dec. 9, 2019)..................................................................44

*Ewalan v. Holbrook*,
  No. C20-01497-JLR-SKV, 2022 WL 1477557
  (W.D. Wash. Mar. 28, 2022) ..............................................................38

*Federal Trade Commission v. AH Media Group, LLC*,
  339 F.R.D. 612 (N.D. Cal. 2021)........................................................43

*Federal Trade Commission v. Hewitt*,
  68 F.4th 461 (9th Cir. 2023) ........................................................43, 45

*Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of
  Educ.*,
  896 F.3d 1132 (9th Cir. 2018) ...........................................................25

iv

# TABLE OF AUTHORITIES

**Page**

*Gonzalez v. Coverall N. Am., Inc.*,
754 F. App'x 594 (9th Cir. 2019) ........................................................2, 15, 27, 33

*Gonzalez v. Coverall N. Am., Inc.*,
826 F. App'x 645 (9th Cir. 2020) ..............................................................19, 20

*Gonzalez v. Crosby*,
545 U.S. 524 (2005).............................................................................................25

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000).................................................................................................37

*Harman v. Harper*,
7 F.3d 1455 (9th Cir. 1993) ................................................................................3

*Hegler v. Borg*,
50 F.3d 1472 (9th Cir. 1995) ............................................................................29

*Henson v. Fidelity National Fin., Inc.*,
943 F.3d 434 (9th Cir. 2019) ....................................................................passim

*Horne v. Flores*,
557 U.S. 433 (2009) (Breyer, J., dissenting on other grounds) ........................26

*In re Lorillard Tobacco Co.*,
370 F.3d 982 (9th Cir. 2004) ............................................................................33

*In re Mason*,
709 F.2d 1313 (9th Cir. 1983) .......................................................................3, 27

*In re Mason*,
709 F.3d 1313 (1983).........................................................................................26

*Interactive Flight Techs., Inc. v. Swissair Swiss Air Transportation Co.*,
249 F.3d 1177 (9th Cir. 2001) .....................................................................31, 37

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ..........................................................................31

*Jones v. Ryan*,
733 F.3d 825 (9th Cir. 2013) ............................................................................43

# TABLE OF AUTHORITIES

**Page**

*Kludka v. Qwest Disability Plan*,
  No. CV–08–01806–PHX–DGC, 2012 WL 1681983
  (D. Ariz. May 14, 2012) .......................................................................39

*Laguna v. Coverall N. Am., Inc.*,
  753 F.3d 918 (9th Cir. 2014), *vacated based on settlement* (Nov. 20, 2014) ......8

*Langere v. Verizon Wireless Servs., LLC*,
  983 F.3d 1115 (9th Cir. 2020) ........................................................21, 24, 40, 47

*Lemoge v. U.S.*,
  587 F.3d 1188 (9th Cir. 2009) .............................................................25

*Lynch v. Blodgett*,
  999 F.2d 401 (9th Cir. 1993) ..............................................................3

*Matter of Hawaii Corp.*,
  796 F.2d 1139 (9th Cir. 1986) ............................................................27

*MediVas, LLC v. Marubeni Corp.*,
  741 F.3d 4 (9th Cir. 2014) ..........................................................16, 39

*Merritt v. Mackey*,
  932 F.2d 1317 (9th Cir. 1991) ............................................................28

*Microsoft Corp. v. Baker*,
  577 U.S. 1099 (2016)..........................................................................43

*Microsoft, Inc. v. Baker*,
  582 U.S. 23 (2017)......................................................................passim

*Muszynski v. Runnels*,
  No. 10-15808, 2011 WL 2601499 (9th Cir. July 1, 2011) ................................28

*Nat'l Indus. v. Republic Nat'l Life Ins. Co.*,
  677 F.2d 1258 (9th Cir. 1982) ............................................................21

*Omstead v. Dell, Inc.*,
  594 F.3d 1081 (9th Cir. 2010) .........................................................34, 37, 40

*Patterson v. Domino's Pizza, LLC*,
  60 Cal. 4th 474 (2014) .......................................................................6, 7

# TABLE OF AUTHORITIES

**Page**

*Petet v. Equity Residential Properties Trust*,
   No. 98-35707, 234 F.3d 1278 (9th Cir. 2000) ....................................................28

*Phelps v. Alameida*,
   569 F.3d 1120 (9th Cir. 2009) ...............................................................passim

*Richardson v. Brother Int'l Corp.*,
   400 F. Appx. 284 (9th Cir. Oct. 25, 2010) .........................................................28

*Riggs v. Judicial Conference of U.S.*,
   137 F. Appx. 72 (9th Cir. June 24, 2005) ...........................................................28

*Riley v. Filson*,
   933 F.3d 1068 (9th Cir. 2019) ............................................................................41

*Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*,
   823 F.2d 302 (9th Cir. 1987), *overruled on other grounds*, *Partington v. Gedan*,
   923 F.2d 686 (9th Cir. 1991) ..............................................................................33

*Salazar v. McDonald's Corp.*,
   944 F.3d 1024 (9th Cir. 2019) ..............................................................................6

*Serrato v. County of Los Angeles*,
   No. CV10-4786 ABC(AJW), 2012 WL 6952460
   (C.D. Cal. Dec. 5, 2020) .....................................................................................20

*Sneller v. City of Bainbridge Island*,
   606 F.3d 636 (9th Cir. 2010) ..............................................................................28

*Sperring v. LLR, Inc.*,
   995 F.3d 680 (9th 2021) .............................................................................11, 40

*Sperring v. LLR, Inc.*,
   No. 21-56138, 2022 WL 3136947 (9th Cir. Aug. 5, 2022) .........................41, 42

*Tillman v. Tillman*,
   825 F.3d 1069 (9th Cir. 2016) ............................................................................14

*U.S. v. Martin*,
   226 F.3d 1042 (9th Cir. 2000) ............................................................................20

*U.S. v. Martin*,
   228 F.3d 1042 (9th Cir. 2000) ............................................................................34

# TABLE OF AUTHORITIES

**Page**

*U.S. v. Thrasher*,
  483 F.3d 977 (9th Cir. 2007) ...................................................28

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
  243 F.3d 1181 (9th Cir. 2001) ................................................29

*United States v. Ceja–Prado*,
  333 F.3d 1046 (9th Cir. 2003) ................................................25

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951).................................................................26

**STATUTES**

9 U.S.C. § 16(b)(2)......................................................................9

28 U.S.C. § 1291 ...................................................................21, 27

28 U.S.C. § 1292 ...................................................................34, 45

28 U.S.C. §1292(b) ...................................................................15

California Franchise Investment Law, California Corporations Code § 31005(a) ...5

California Franchise Relations Act, California Business & Professions Code §
  20001.........................................................................................5

Federal Arbitration Act ..................................................*passim*

**OTHER AUTHORITIES**

AAA Commercial Arbitration Rules, available at www.adr.org; ..........14

Cal. Civ. R. 7-18 .......................................................................17

Fed. R. App. P. 28.......................................................................2

Fed. R. App. P. 28-2.2..................................................................2

Fed. R. Civ. P. 60(b)(6).......................................................*passim*

Fed. R. Civ. P. 60(c)................................................................29

https://www.ca9.uscourts.gov/content/feeschedule.php.........................13

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Coverall North America, Inc. makes the following corporate disclosure pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure:

Coverall North America, Inc. is wholly owned by CNA Holding Corporation. Neither Coverall North America, Inc. nor CNA Holding Corporation is publicly traded, and no publicly held company holds 10% or more of either entity's stock.

## JURISDICTIONAL STATEMENT

Pursuant to Rule 28 of the Federal Rules of Appellate Procedure and Circuit Rule 28-2.2, Defendant-Appellee Coverall North America, Inc. ("Coverall") submits the following Jurisdictional Statement.

a. Coverall agrees with Plaintiff-Appellant Sergio Gonzalez's ("Plaintiff") recitation of the district court's original jurisdiction. However, the district court lacked jurisdiction to rule on the Rule 60(b) motion that is the subject of this appeal. That is because, as this Court previously ruled, the order to which that motion was directed—the order granting Plaintiff's motion to dismiss his claims *without* prejudice—was not a final order. *See Black Patients Matter v. Kirchmeyer*, No. CV19-03056PA(JCx), 2020 WL 1972576, at *2 (C.D. Cal. Jan. 16, 2020) (denying motion to set aside dismissal because plaintiff's "voluntary dismissal of this action as to the [Defendants] is not a final judgment or order within the meaning of Rule 60(b)").

b. Coverall disagrees with Plaintiff's recitation of this Court's jurisdiction and submits this Court lacks jurisdiction over this appeal. As discussed more fully below, this Court has already determined that the original order in this case—which granted Plaintiff's motion to dismiss his claims *without* prejudice—was not final and therefore was not appealable. *See Gonzalez v. Coverall N. Am., Inc.*, 754 F. App'x 594, 595 (9th Cir. 2019). That decision, which was in accord with long-standing

2

precedent, is now the law of the case. Plaintiff's repeated requests that the district court relieve him of the effects of that non-final, unappealable order (by invoking a Rule [Rule 60(b)] that, by its terms, applies only to "final" orders) does nothing to imbue either the district court's original dismissal order, or the district court's subsequent order denying Plaintiff relief from the original dismissal order, with the finality needed to create appellate jurisdiction. *In re Mason*, 709 F.2d 1313, 1315 (9th Cir. 1983) ("[T]he finality of [Rule 60(b)] orders [and therefore whether they may be reviewed] derives from the finality of the underlying judgment upon which such relief is sought.").

In each of the cases Plaintiff cites in his Jurisdictional Statement, the Rule 60(b) motion was addressed to a *final* judgment. *See Lynch v. Blodgett*, 999 F.2d 401, 403 (9th Cir. 1993) (holding that a certificate of probable cause is a prerequisite to appealing the denial of a post-judgment motion in a habeas proceedings); *Dejeu v. Wash. State Dep't of Labor & Indus.*, 623 F. App'x 901, 902 (9th Cir. 2015) (addressing motion to set aside judgment); *Harman v. Harper*, 7 F.3d 1455, 1457 (9th Cir. 1993) (addressing final judgment after bench trial). This case does not involve a final judgment, and longstanding precedent confirms there is no appellate jurisdiction over orders granting a party's request to voluntarily dismiss his or her own claims *without* prejudice. *Microsoft, Corp. v. Baker*, 582 U.S. 23(2017) (*"Baker"*), which involved a request to dismiss claims *with prejudice*, presented no

intervening change in the law relevant to this case. For these and the additional reasons set forth below, this appeal should be dismissed. (*See* Section I, *infra*.)

## STATEMENT OF ISSUES

1.      Whether this Court has jurisdiction over Plaintiff's current appeal—which asks this Court to review an order denying Plaintiff's motion for relief from an earlier order granting his motion to voluntarily dismiss his claims without prejudice—given that this Court has already ruled that the earlier order was not final and, therefore, not appealable?

2.      Whether *Henson v. Fidelity Nat'l Fin., Inc*., 943 F.3d 434 (9th Cir. 2019), which addresses the circumstances under which a change in the law will support relief from a final order, applied in this case, where the underlying order dismissing Plaintiff's claims without prejudice was not final?

3.      Whether Plaintiff waived his right to seek relief from the order granting Plaintiff's own motion to dismiss his claims without prejudice based on an alleged change in the law when Plaintiff failed to seek relief on that basis in the district court?

4.      Assuming *arguendo* it had subject matter jurisdiction to rule on Plaintiff's Rule 60(b) motion, whether the district court abused its discretion in holding that *Henson* did not support granting relief where, as in this case, there was no change in the governing law?

## STATEMENT OF THE CASE

### A.   The Parties

Coverall is a franchisor of commercial cleaning businesses. (II-ER-242 ¶ 3.) In business since 1985, Coverall presently has over 4,717 franchisees in the United States. (*Id.*)[1] Plaintiff is one of those franchisees.[2]

On September 22, 2006, Plaintiff entered into a written Janitorial Franchise Agreement (the "Franchise Agreement") with Coverall that gave Plaintiff the right to operate a commercial cleaning business using Coverall's trademarks and operating system. (II-ER-245-68.) While Plaintiff's ownership of his franchise has varied over the years—he sold his franchise to Anna Gonzalez on October 11, 2006 (II-ER-270-72) and then approximately two years later, he reacquired a 50% interest in that same franchise—Plaintiff's original September 22, 2006, agreement remains in full force and effect. (II-ER-274-75.) It affirms, among other things, the parties'

---

[1]   Plaintiff asserts that most of Coverall's franchisees are "non-English speaking immigrants." (Opening Br. at 6.) While that oft-repeated assertion may fit the Dickensian narrative Plaintiff seeks to create, it is both unsupported and incorrect. The vast majority of Coverall's franchisees are entities that have their own employees, and many operate businesses that gross hundreds of thousands of dollars a year.

[2]   Plaintiff repeatedly refers to Coverall's franchisees as "workers." That term is inaccurate. The California legislature has defined the term "franchise" in at least two statutes: the California Franchise Investment Law ("CFIL"), California Corporations Code § 31005(a), and the California Franchise Relations Act, California Business & Professions Code § 20001. The relationship between Coverall and Plaintiff meets the definition of "franchise" under both statutes.

agreement and understanding that Plaintiff was, and would "remain at all times," an independent contractor, and that no agency or employment relationship existed between the parties. (II-ER-258 ¶13.)

Although Plaintiff attempts to argue otherwise, the actual relationship between Coverall and its franchisees is in accord with the parties' agreement and the principles that govern franchised businesses generally. Plaintiff complains, for example, that Coverall requires franchisees to pay certain fees (like franchise fees) and asserts that it wrongly exercises control over its franchisees by providing training and interacting with customers. (Opening Br. at 6.) But as both the California Supreme Court and this Court have recognized, these are standard elements of all franchise systems. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 482, 489 & n.2 (2014) (observing that franchisees pay initial fees and royalties, and must follow the franchisor's standards and procedures, which typically include a long list of marketing, production, operations and administrative processes, and noting that Domino's required franchisees to undergo training as a condition of operating their stores, supplied training materials franchisees could use for their own employees and required the wearing of uniforms); *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1030 (9th Cir. 2019) ("Franchisors like McDonald's need the freedom to 'impose[] comprehensive and meticulous standards for marketing [their]

trademarked brand and operating [their] franchises in a uniform way.'") (Alterations in original; quoting *Patterson*).

Further, while Plaintiff claims that Coverall's franchisees "work exclusively for Coverall's clients," are "unable to develop their own client base apart from their work for Coverall," and that Coverall takes accounts away from franchisees "in its discretion," these allegations are demonstrably false. (Opening Br. at 8 and n.3.) On August 8, 2008, a Coverall franchisee named Sabrina Laguna filed a putative class action against Coverall in the United States District Court for the Southern District of California raising allegations substantially similar to those raised in this case. *Sabrina Laguna v. Coverall N. Am., Inc.*, Case No. 3:09-cv-02131-JM (BGS). After extensive discovery and motion practice, that case was settled. (II-ER-242-43 ¶ 8.) Under the settlement, Coverall (which did not admit any liability) made various modifications to its franchise system to address the claims set forth in the *Laguna* complaint. Principal among those was Coverall's agreement to assign to franchisees ownership of the customer contracts they agreed to service. (*Id*.) That modification eliminated Coverall's supposed ability to "take[] away cleaning accounts at its discretion" by vesting ownership of those accounts in the franchisees. (Opening Br. at 8 n.2.) As the Honorable Jeffrey Miller noted in approving the settlement, it also made it so that "franchisees *will own a valuable business they can choose to sell or continue to operate*." (II-ER-290 ¶ 9, Ex. E; emphasis added.)

Plaintiff is aware of these facts because he was a franchisee at the time and received notice of (and chose not to opt out of) this settlement. (II-ER-243 ¶ 10.) Plaintiff's counsel is also aware of this fact because she represented the sole objector to the *Laguna* settlement. *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (9th Cir. 2014), *vacated based on settlement* (Nov. 20, 2014).[3]

## B.  <u>Plaintiff's Complaint and Coverall's Motion to Compel Arbitration</u>

On November 2, 2016, Plaintiff filed a complaint in the district court alleging that he was misclassified as an independent contractor and that Coverall had violated various provisions of the California Labor Code by charging the fees set forth in the parties' Franchise Agreement and by failing to provide itemized wage statements. (III-ER-301-312.) Coverall subsequently filed a motion to compel arbitration, which the district court granted by Order dated April 13, 2017. (April 13, 2017 Minute Order, District Court Docket ["Dkt."] 27; Supplement Excerpts of Record ["SER"]

---

[3]     The cases Plaintiff cites in support of his assertion that other courts have deemed Coverall's franchisees to be employees under Prong B, which were decided prior to this modification, hinged on Coverall's ownership of customer accounts. Contrary to what Plaintiff would have this Court believe, *Dynamex Operations W. Inc. v. Super. Ct.*, 4 Cal. 5th 903 (2018), did not cite these decisions for their underlying holdings. It cited them only for the proposition that "[b]ecause in many cases it may be easier and clearer for a court to determine whether or not part B or part C of the ABC standard has been satisfied than for the court to resolve questions regarding the nature or degree of a worker's freedom from the hiring entity's control for purposes of part A of the standard, the significant advantages of the ABC standard—in terms of increased clarity and consistency—will often be best served by first considering one or both of the latter two parts of the standard in resolving the employee or independent contractor question." *Id*. at 963.

51-60.) That Order, however, was quite limited in scope. (*Id*.) Because the district court concluded that the parties had clearly and unmistakably agreed to arbitrate arbitrability questions, it did *not* determine that Plaintiff's claims were in fact arbitrable. (*Id*.) It concluded *only* that Plaintiff's challenges to the enforceability of his arbitration agreement needed to be addressed by an arbitrator. (*Id*.) For this reason, the district court did not dismiss Plaintiff's lawsuit. (*Id*.) Rather, it stayed the suit "pending a decision on arbitrability by the arbitrator" and ordered the parties to provide a joint status report once the arbitrator made that determination "or by July 17, 2017, whichever is sooner." (*Id*.; SER-60.)

## C. __Plaintiff's First Attempt To Manufacture Appellate Jurisdiction__

The Federal Arbitration Act ("FAA") does not permit interlocutory appeals from orders which, like the one the district court entered in this case, are in favor of arbitration. *See* 9 U.S.C. § 16(b)(2). So, prior to even *trying* to arbitrate his claims, Plaintiff attempted to create the right of appeal that Congress refused to provide. On April 24, 2017, Plaintiff moved the district court to dismiss his claims ***without prejudice***. (Plaintiff's Motion to Dismiss [Dkt. 28]; SER-45-50.) He noted, quite candidly, that his motive in making this request was to create appellate jurisdiction that did not otherwise exist: "Plaintiff now moves the Court to dismiss and enter final judgment on Plaintiff's Labor Code claims in this matter, so that Plaintiff can appeal the Order." (*Id*.; SER-47.)

Coverall opposed Plaintiffs motion to voluntarily dismiss his claims, arguing in part that dismissal was inappropriate because: (1) there remained the possibility that some or all of Plaintiff's claims would need to be adjudicated by the district court following the arbitrator's ruling on the question of arbitrability; and (2) a party cannot manufacture a right of appeal by seeking a dismissal **without** prejudice. (Coverall's Motion for Reconsideration [Dkt. 30-1]; SER-38-44.) This point was not disputed in the court below. In fact, while case law in this Circuit then allowed a party to create appellate jurisdiction by voluntarily dismissing his claims **with** prejudice, Plaintiff cited no case (and Coverall is aware of none) which allowed a party to manufacture appellate jurisdiction by dismissing his claims **without** prejudice (particularly where, as here, those claims had not been sent to arbitration on the merits).

The district court granted Plaintiff's motion to dismiss (II-ER-238) over Coverall's objection. However, the court made clear that "it did not make a finding as to whether Plaintiff actually has a right to appeal in this instance," and that "[w]hether Plaintiff is entitled to appeal the April 13, 2017 Order is now a question for the Ninth Circuit." (May 26, 2017 Order re: Motion for Reconsideration [Dkt.

33]; SER-36-37.) On June 1, 2017, Plaintiff filed his first Notice of Appeal (the "First Appeal") with this Court. (Case No. 17-55787.)[4]

### D. Plaintiff's Alleged Efforts to Arbitrate

Plaintiff contends that, shortly after he filed the First Appeal, he made a good faith effort to pursue his claims in arbitration but was unable to do so given the costs of arbitrating. (Opening Br. at 24.) The actual evidence tells a very different story.

On July 12, 2017, Plaintiff submitted a demand for arbitration to the AAA. (II-ER-55.) That demand, however, did not encompass all of Plaintiff's claims. Apparently hoping to create a scenario where all his claims would be resolved on a class or collective basis, Plaintiff split his claims. In his arbitration demand, Plaintiff stated that he was proffering only his PAGA claim—which then-existing law required to be arbitrated (if at all) on a collective basis—for arbitration. (II-ER-59-60.) He took the position that his Labor Code claims, which then-existing law made clear needed to be arbitrated on an individual basis, should be "stayed" pending this Court's resolution of the First Appeal. (*Id.*)

Plaintiff took his so-called "efforts" to resolve any of his claims in arbitration no farther—and the facts indicate he never had any real intention of doing so. After

---

[4] Plaintiff repeatedly attributes significance to the fact that he did not file a notice of dismissal and that the district court granted his motion to dismiss. This Court made clear in *Sperring v. LLR, Inc.*, 995 F.3d 680, 682 (9th Cir. 2021), that this alleged distinction "is of no consequence."

the AAA determined that the Commercial Arbitration Rules (rather than the Employment Arbitration Rules) would apply pending a contrary determination by the appointed arbitrator, Plaintiff effectively withdrew from arbitration.[5] And he did so even though (as Plaintiff previously admitted) he never received *any* invoice from the AAA that set forth what his actual costs would be (Plaintiff's Renewed Motion to Reopen [Dkt. 51-1]; SER-20-22 at n.11 & 12).

In his Opening Brief, Plaintiff misleadingly asserts (repeatedly) that he withdrew from arbitration because he could not afford "to pay $4,000 to commence the arbitration" (Opening Br. at 12). But the document Plaintiff cites to in support of this assertion was from another case involving a different franchisee (*see* II-ER-147), was issued *after* Plaintiff had already withdrawn from his arbitration, and involved a case in which *three arbitrators* were originally to be appointed. (*Id*.) As evidenced in correspondence from the AAA, the parties in *this* case agreed to have a *single* arbitrator resolve their arbitrability disputes. (II-ER-116.) The cost of one arbitrator (which would have been split between the parties under the Commercial Rules) would presumably have been one-third the cost of three (or $1,333)—which is far

---

[5]     Plaintiff repeatedly asserts that Coverall somehow forced the AAA to apply the Commercial Rules rather than the Employment Rules. That is incorrect. In truth, the AAA advised the parties it had made a mistake in initially determining that the Employment Rules applied, and that absent a ruling from an arbitrator to the contrary, the parties would be held to their agreement to arbitrate pursuant to the Commercial Rules. (Dkt.41-1 at ¶ 7.)

less than the nearly $2,000 in fees Plaintiff has already paid to file his complaint in the district court and to file his now three separate appeals in this Court. *See* https://www.ca9.uscourts.gov/content/feeschedule.php.[6]

Despite never having received any invoice, Plaintiff advised the AAA that he would not pay ***any*** portion of the fees. (*See* II-ER-116, where AAA's Manager of ADR Services, Jonathan Weed, states: "Claimant's counsel indicated on the August 1, 2017 conference call that **they will not advance any portion of the arbitrator compensation deposit**"; emphasis added.) It is unclear why Plaintiff refused to pay any fees, particularly since he represented (in the Cover Sheet his counsel submitted to the AAA) that his income was *in excess of $250,000*. (II-ER-55.)[7] However, his

---

[6]    Neither these fees nor the AAA's fees are truly an impediment to Plaintiff because, as Plaintiff's counsel affirmed in another filing, her firm bears all the expenses and costs associated with litigating these types of cases. (*See* Dkt. 41-1 at Page ID#: 667.)

[7]    Plaintiff refused to produce any documentation to support his contrary claim that he could not afford arbitration. These types of inconsistencies have been noted in other cases. *See, e.g., Brandao v. Jan-Pro Franchising Int'l, Inc.*, 124 N.E.3d 159, 2019 WL 1244627, at *1 (Mass. App. Ct. Mar. 18, 2019) (noting that an arbitrator reversed her determination to shift the costs of arbitration to the defendant based on "inaccuracies and misrepresentations" in the franchisee's affidavit and then held she was no longer "persuaded by [the franchisee's] assertion that his failure to pay the required deposits is due to his inability to do so"). Regardless, if Plaintiff's bare proclamation that he could not afford the costs of arbitration were sufficient evidence of a party's inability to pay, any party could avoid their obligation to arbitrate simply by declaring, without any evidentiary support, that they could not afford the anticipated, albeit unknown, costs of arbitration. Given the strong federal policy in favor of arbitration agreements, Coverall submits far more is required.

representation about his income may be why Plaintiff never attempted to avail himself of the fee waiver policies the AAA makes available to litigants that are truly indigent. The AAA has instituted several safeguards to make sure that indigent claimants are not faced with excessive costs. In addition to permitting parties to request that arbitrators serve on a *pro bono* basis, the AAA's Rules provide that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce administrative fees." Rule 55, AAA Commercial Arbitration Rules, available at www.adr.org; *see also Digiacomo v. Ex'pression Ctr. for New Media, Inc.,* No. C 08-01768 MHP, 2008 WL 4239830, at *6 (N.D. Cal. Sept. 15, 2008) (the AAA's Rules "constitute[] a reasonable and conscionable substitute for a judicial forum" because they provide fee waivers); *Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016) (the AAA has "discretion to reduce fees in the event of hardship"); *Borgarding v. JP Morgan Chase Bank,* No. CV 16–2485 FMO (RAOx), 2016 WL 8904413, at *6 (C.D. Cal. Oct. 31, 2016). There is nothing in the record which shows Plaintiff attempted to invoke any of these procedures.[8] His actions (or inactions, as the case may be) point to the same conclusion: that Plaintiff merely wanted to "check the

---

[8]     This is not the first time Plaintiff's counsel has tried this tactic. *See Billie v. Coverall N. Am., Inc.*, No. 22-718-cv, 2023 WL 2531396, at *3 (2nd Cir. Mar. 15, 2023) (reversing determination that arbitration had been "had" for purposes of Section 3 of the FAA because instead of invoking the options available under the AAA Rules "that might have prevented termination, [the franchisee] himself brought the arbitration proceedings to an abrupt and premature end" by withdrawing).

box" so he could claim that he tried, but was unable, to arbitrate his dispute, so he could run back to the district court to seek to reopen this case.[9]

## E.   The Dismissal of Plaintiff's First Appeal

On February 22, 2019, this Court dismissed the First Appeal for lack of jurisdiction. *Gonzalez*, 754 F. App'x at 595. Holding that "[i]t is well-established that §16(b) of the Federal Arbitration Act ("FAA") bars appeals of interlocutory orders compelling arbitration and staying judicial proceedings," this Court held that Plaintiff "was obliged to obtain the district court's permission for an interlocutory appeal under 28 U.S.C. §1292(b)" to appeal the order compelling arbitration. *Id.* at 596. It was, the Court noted, undisputed that Plaintiff failed to seek that permission. *Id.* This Court (correctly) rejected Plaintiff's argument that he had created jurisdiction by moving to dismiss his claims without prejudice. As this Court noted, "[a] plaintiff's 'voluntary dismissal *without prejudice* is ordinarily *not* a final judgment from which the plaintiff may appeal." *Id.* (quoting *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995) (emphasis in original)).

---

[9]   Plaintiff's assertion that Coverall's goal was to prevent Plaintiff from pursuing his claims in any forum is unsupported and false. In every case where an arbitrator has concluded that a franchisee was unable to bear the costs of arbitration, Coverall has advanced those costs. *See id*., 2023 WL 2531396, at *1 n.2 (noting that "in the arbitration brought by Reeves's co-plaintiff, Billie, the arbitrator held that Coverall must bear the full cost of the arbitration and the case went forward"). Here, Plaintiff made no such showing—he simply refused to pay anything..

Plaintiff's efforts to rewrite history notwithstanding, none of this Court's holdings rested on the Supreme Court's decision in *Baker*, 582 U.S. 23. As the Court's opinion itself shows, this Court's conclusion that it lacked jurisdiction rested solely on: (i) Section 16 of the FAA, which has always barred appeals of interlocutory orders compelling arbitration and staying judicial proceedings (*see* 9 U.S.C. § 16(b)); (ii) this Court's 2014 decision in *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 7 (9th Cir. 2014), which reiterated the well-established rule that an order compelling arbitration "may not be appealed if the court stays the action pending arbitration"; and (iii) this Court's 1995 decision in *Concha*, 62 F.3d at 1507, which confirms the long-settled principle that dismissals without prejudice are not final, appealable orders.

## F.    Plaintiff's Renewed Motion to Reopen the Case and the Second Appeal

Following this Court's dismissal of the First Appeal for lack of jurisdiction, Plaintiff returned to the district court and filed a Renewed Motion to Reopen the Case (the "Second Motion to Reopen") pursuant to Fed. R. Civ. P. 60(b)(6). (Plaintiff's Second Motion to Reopen [Dkt. 51-1]; SER-3-32.)[10] The district court's

---

[10]    Plaintiff's first motion to reopen (the "First Motion to Reopen") was filed on December 4, 2017, while the First Appeal was pending (*see* Dkt. 38.). The district court denied that motion on February 2, 2018, based on its lack of jurisdiction over the matter during the pendency of the appeal (II-ER-238).

(repeated) denial of Plaintiff's Second Motion to Reopen forms the basis for this appeal.

While his current appeal contends the First Appeal was dismissed based on a new legal principle and an unforeseeable change in the law, that argument did not appear in Plaintiff's Second Motion to Reopen. In fact, Plaintiff's Second Motion to Reopen did not even mention *Baker*. Instead, the Second Motion to Reopen rested entirely on Plaintiff's claim that relief from the dismissal order he had specifically requested was warranted under Rule 60(b) based on an alleged *change in facts*:

> The "emergence of new material facts" renders arbitration an ineffective forum for Mr. Gonzalez to vindicate his rights and to press this argument before this Court. See C.D. Cal. Civ. R. 7-18. Specifically, Mr. Gonzalez has now attempted to arbitrate his claims and has been effectively turned away by the AAA because he could not afford to pay thousands of dollars in compensation deposits as a prerequisite to appointing an arbitrator.

> These new developments constitute new material facts that warrant reopening this case and reinstating Mr. Gonzalez's claims pursuant to Fed. R. Civ. P 60(b)(6).

(Plaintiff's Second Motion to Reopen [Dkt. 51-1]; SER-17.)[11]

The district court denied Plaintiff's Second Motion to Reopen. (II-ER-45-8.) Recognizing that Rule 60(b)(6) of the Federal Rules is to be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where

---

[11]     Plaintiff's assertion (*see* Opening Br. at 47) that his motion "was premised on both a change of law and a change in the facts" is inaccurate.

extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment," the district court concluded that this was "not a case involving an erroneous judgment that was beyond Plaintiff's control." (II-ER-47-8.) Plaintiff, the court noted:

> held in his own hands the decision of whether to allow his claims to remain stayed before this Court and affirmatively chose to seek dismissal so that he could pursue an appeal to the Ninth Circuit. Plaintiff created these circumstances himself and made a calculated risk in employing a litigation tactic which proved fruitless. Though unfortunate, this is not a situation warranting the use of the sparingly-granted relief under Rule 60(b)(6).

(II-ER-48.)

In response to this ruling, Plaintiff filed his second Notice of Appeal (the "Second Appeal"). Shortly before argument, on June 26, 2020, this Court issued an order advising the parties that, "At oral argument on July 7, 2020, counsel should be prepared to discuss the effect on this appeal, if any, of the Ninth Circuit decision in *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019)" (Dkt. No. 38 in Case No. 19-55511), which analyzed the factors a district court should consider on a Rule 60(b) motion that seeks relief from a voluntary dismissal *with* prejudice because of an intervening change in the law. *See Henson*, 943 F.3d at 443-44 (noting that the appellants in *Henson* voluntarily dismissed their claims *with* prejudice). On July 6, 2020, Coverall submitted a letter to the Court raising questions regarding the Court's jurisdiction over the Second Appeal. (Dkt. No. 39 in Case No. 19-55511.)

A different panel of this Court heard argument on the Second Appeal on July 7, 2020. By Memorandum dated October 21, 2020, the majority (consisting of Senior Judge Berzon and Judge Katzmann, sitting by designation) remanded the case, holding that "[b]ecause the district court did not have an opportunity to consider whether and how the *Henson* factors might apply to this case, we remand to allow the district court to do so in the first instance." *Gonzalez v. Coverall N. Am., Inc.*, 826 F. App'x 645, 646 (9th Cir. 2020). The majority did not address this Court's jurisdiction. Judge Collins dissented. He noted that the majority's decision disregarded the decision in the First Appeal, which was the law of the case, and that Plaintiff's "effort to manufacture appellate jurisdiction over the district court's interlocutory arbitration ruling by requesting voluntary dismissal … fell squarely within the settled rule that such dismissals do not create a final appealable decision, *see Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995)—as the prior panel properly held." *Id*. at 647-48.

## G.    Reconsideration of The Second Motion to Reopen and the Third Appeal

On December 8, 2022, after receiving supplemental briefing regarding the applicability of *Henson*, the district court issued an order affirming its prior denial of Plaintiff's Second Motion to Reopen. (I-ER-2-10.) The court first noted that it tended to agree, as Coverall argued, that it lacked jurisdiction to address Plaintiff's Rule 60(b) motion because the ruling which that motion challenged—the voluntary

dismissal of Plaintiff's claims without prejudice—was itself not a final order "appropriate for Rule 60(b) reconsideration." (I-ER-5.)[12]

However, given this Court's directive that it "consider 'whether and how the *Henson* factors might apply to this case" (*Gonzalez*, 826 F. App'x at 646), the district court conducted a thorough analysis of those factors and held that "even if *Henson* is applicable to this case, the relevant factors, especially the change-in-the-law factor, counsels against granting Rule 60(b)(6) relief here." (I-ER-9.)

In the wake of this ruling, Plaintiff did not file a new suit in the district court (which he could have done at any time because his original suit was dismissed without prejudice, but which would be met with a motion to compel arbitration), nor did he file an arbitration demand and seek a fee waiver or the appointment of a pro bono or reduced fee arbitrator. Instead, on December 19, 2022, Plaintiff filed the instant appeal (the "Third Appeal"). (III-ER-313.)

On January 10, 2023, Coverall filed a motion to dismiss the Third Appeal for lack of jurisdiction. (Dkt. 5 in Case 22-56189.) By Order dated April 20, 2023, the motions panel denied Coverall's motion without prejudice to renewing that motion

---

[12] By its terms, "Rule 60(b) 'applies only to motions attacking *final*, appealable orders . . . .'" *Serrato v. Cnty. of L.A.*, No. CV10-4786 ABC(AJW), 2012 WL 6952460, at *2 (C.D. Cal. Dec. 5, 2020) (quoting *U.S. v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000)) (emphasis added). Because the order granting Plaintiff's motion to voluntary dismiss his claims without prejudice was not final, Rule 60(b) did not properly apply.

here. (Dkt. 19 in Case 22-56189.) *See Nat'l Indus. v. Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1262 (9th Cir. 1982) (merits panel may consider appellate jurisdiction despite earlier denial of motion to dismiss).

## SUMMARY OF THE ARGUMENT

Even if Plaintiff presented a viable basis for challenging the district court's decision to deny his Second Motion to Reopen—and he has not—this Court should not reach the merits of Plaintiff's arguments because it lacks jurisdiction over this appeal. Because the federal courts are courts of limited jurisdiction, it is settled law that, subject to certain inapplicable exceptions, this Court "may only review decisions from district courts that are 'final.'" *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1118 (9th Cir. 2020) (quoting 28 U.S.C. § 1291). "This principle, called the final-judgment rule, is fundamental to our legal system" (*id.*), as it prevents "piecemeal disposition on appeal of what for practical purposes is a single controversy …." *Id.* (quoting *Cobbledick v. U.S.*, 309 U.S. 323, 325 (1940)).

This case exemplifies perfectly what happens when that principle is not strictly enforced. In resolving the First Appeal, this Court correctly found that Plaintiff had no right to appeal the district court's order granting Coverall's motion to compel arbitration. Plaintiff's effort to manufacture such a right by voluntarily dismissing his claims without prejudice did not alter this fact. It has now been more than six years since the district court granted Coverall's motion to compel, and

nearly 4½ years since this Court dismissed the First Appeal. But this case has not progressed at all. Unwilling to take the steps needed to proceed on the merits—*i.e.*, filing a new suit or making a good faith effort to arbitrate—Plaintiff continues to file motions (under the guise of Rule 60(b)) asking the district court to relieve him of the effects of the very dismissal order that *Plaintiff asked the district court to enter*. The denial of each such motion is predictably followed by yet another appeal, each of which asks this Court to review the very ruling (the district court's order enforcing the delegation of arbitrability issues to an arbitrator) that was the subject of this First Appeal and that this Court *already ruled is interlocutory and unreviewable*. That same ruling did not suddenly become final and reviewable because Plaintiff again asked the district court to relieve him of the effects of the dismissal order.

Plaintiff's dramatic assertions that he will be unable to press his claims absent this Court's intervention are both irrelevant and wrong. This is a court of limited jurisdiction—either it has subject matter jurisdiction over this matter, or it does not. Equitable considerations, real or imagined, have no role in that analysis. Regardless, Plaintiff's overwrought plaint should be seen for the sham it is. All Plaintiff needs to do to have a forum for his claims is (i) file a new suit or (ii) make a good faith effort to arbitrate (by seeking fee waivers or the services of a pro bono arbitrator if necessary). And all he will "lose" by pursuing these other options is the benefit of

an artificially-extended limitations period that exists only because of the procedural gamesmanship he has engaged in over the past six years.

In the event this Court concludes it has jurisdiction, it should reject Plaintiff's claim that the district court abused its discretion in concluding that the factors set forth in *Henson* do not support granting Plaintiff relief under Rule 60(b). *Henson* addressed the factors courts should consider in addressing Rule 60(b) motions that seek relief from *final* judgments or orders based on an intervening change in governing law. But as the First Appeal made clear, there was no final judgment or order in this case. That binding ruling leads to two conclusions, both of which warrant rejection of this appeal. The first is that Rule 60(b) was not properly invoked because the order granting Plaintiff's motion to dismiss without prejudice was not "final." The second is that *Baker* could not have changed the governing law because *Baker* addressed a party's attempt to create appellate jurisdiction by dismissing an action *with* prejudice. In this case, Plaintiff dismissed his action *without* prejudice, and longstanding precedent confirms that a litigant cannot create appellate jurisdiction by dismissing an action *without* prejudice because such dismissals are not "final" for purposes of an appeal.

Moreover, there is simply no truth to the assertion that the dismissal of the First Appeal was premised on the new principles set forth in *Baker*—which is likely why Plaintiff did not even raise that argument in his Second Motion to Reopen. This

Court's decision did not mention *Baker* or rely on *Baker's* reasoning, nor did this Court assert it was changing the law. As several panels of this Court have recognized, the first time this Court applied *Baker's* reasoning in the arbitration context was in 2020—a year *after* the First Appeal was resolved—when it issued its decision in *Langere*, 983 F.3d 1115. That the panel in the First Appeal asked questions about *Baker's* applicability does not mean that its decision was based on that case. A court's reasoning is set forth in its opinions, not the questions asked at oral argument. A contrary approach would lend uncertainty to every opinion by inviting litigants to argue (as Plaintiff does) that opinions are based on unmentioned principles or facts simply because a court probed matters at argument.

Because there was no change in the law, the district court's Order must be affirmed: if there is no intervening change in the governing law, *Henson* does not apply. In any event, an analysis of the remaining factors fully supports the district court's finding that Rule 60 relief was not warranted. There is no basis for concluding that its finding constituted an abuse of discretion.

## STANDARD OF REVIEW

Two different standards are applicable to this appeal. The first relates to this Court's jurisdiction. This Court has an "obligation to investigate and ensure [its] own jurisdiction." *U.S. v. Ceja–Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003). This is true even when its jurisdiction is not challenged by the parties. *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1142 (9th Cir. 2018) (noting the Court's "special obligation" to independently assess and consider the threshold issue of its jurisdiction) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

Assuming this Court concludes it has jurisdiction, the second standard relates to its review of the district court's determination that *Henson* did not support granting Plaintiff's Second Motion to Reopen under Rule 60(b). "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Specifically, this Court "review[s] the denial of a motion for relief from judgment under Rule 60(b) for an abuse of discretion." *Henson*, 943 F.3d at 443. "A district court abuses its discretion by denying relief under Rule 60(b) when it makes an error of law or relies on a clearly erroneous factual determination." *Lemoge v. U.S.*, 587 F.3d 1188, 1192 (9th Cir. 2009). "Particularly where, as here, entitlement to relief depends heavily upon fact-related determinations, the power to review the district court's decision 'ought seldom to be

called into action,' namely only in the rare instance where the Rule 60(b) standard 'appears to have been misapprehended or grossly misapplied.'" *Horne v. Flores*, 557 U.S. 433, 494 (2009) (Breyer, J., dissenting on other grounds) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490-91 (1951)).

## ARGUMENT

### I.   This Court Lacks Jurisdiction Over This Appeal

#### A.   Because This Court Has Already Concluded It Lacked Jurisdiction Over the Order Dismissing Plaintiff's Claims Without Prejudice, It Necessarily Lacks Jurisdiction Over This Appeal.

Plaintiff's appeal fails, and must be dismissed, for the simple reason that this Court lacks jurisdiction to review a district court's denial of a Rule 60(b) motion where, as here, that motion did not follow entry of a final judgment. "[T]he finality of [Rule 60(b)] orders derives from the finality of the underlying judgment upon which such relief is sought." *In re Mason*, 709 F.3d at 1315; *accord Defenders of Wildlife v. Bernal*, 204 F.3d 920, 930 (9th Cir. 2000) ("A district court order declining to entertain or grant a Rule 60(b) Motion is a procedural ruling and not a final determination on the merits."); *Black Patients Matter*, 2020 WL 1972576, at *2 (denying motion to set aside dismissal because the plaintiff's "voluntary

dismissal of this action as to the [Defendants] is not a final judgment or order within the meaning of Rule 60(b)").[13]

In *Aleck v. U.S.*, No. 97-35103, 1998 WL 790009, at *1 (9th Cir. Nov. 5, 1998), for example, the plaintiff sought to reopen her wrongful death case, which she had voluntarily dismissed without prejudice. After the district court denied her Rule 60(b) motion, she appealed. This Court dismissed that appeal for lack of jurisdiction because the plaintiff's "60(b) motion did not follow a final judgment," and "[i]t would make little sense to allow [the plaintiff] to bootstrap appellate jurisdiction solely upon the denial of an improper Rule 60(b) motion." *Id.*

In this case, the underlying order—the one granting Plaintiff's motion to voluntary dismiss his suit without prejudice—was not a final, appealable order. Indeed, that was the precise holding of this Court in the First Appeal. *Gonzalez*, 754 F. App'x at 596 ("A plaintiff's 'voluntary dismissal *without prejudice* is ordinarily *not* a final judgment'") (quoting *Concha*, 62 F.3d at 1507) (emphasis in original). And that decision, which hardly constitutes a change in governing law, is the law of

---

[13] Plaintiff previously argued that *Mason* is applicable only to bankruptcy appeals. This is simply not true. *Buckley v. BMW of N. Am.*, No. 20-56397, 2022 WL 16756341, at *1 (9th Cir. Nov. 8, 2022) (citing *Mason* in a non-bankruptcy context to explain that the court lacked jurisdiction over an initial appeal from Rule 60(b) denial "because the underlying dismissal was not yet final."). Regardless, "the rule of finality for bankruptcy cases is more liberal than the finality rule under 28 U.S.C. § 1291." *Matter of Hawaii Corp.*, 796 F.2d 1139, 1141 (9th Cir. 1986). If Plaintiff's appeal fails under the more liberal approach to finality set forth in *Mason*, then it surely fails here, where that more liberal standard does not apply.

the case.[14] *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (under the "'law of the case' doctrine," one panel of an appellate court will not reconsider questions which another panel decided in a prior appeal in the same case); *U.S. v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.").

The district court's (repeated) denial of Plaintiff's Second Motion to Reopen the case and set aside his voluntary dismissal without prejudice no more created appellate jurisdiction than did the district court's original order granting Plaintiff's motion to dismiss his case without prejudice. Indeed, as the district court recognized (I-ER-4-5), it likely lacked jurisdiction to even address Plaintiff's Second Motion to Reopen, because Rule 60 applies only to *final* orders, and the original order dismissing the case without prejudice was not final. *See Henson*, 943 F.3d at 443 ("Rule 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a *final* judgment, order, or proceeding for ... any ... reason that justifies relief") (emphasis added) (quoting Fed. R. Civ. P.

---

[14] It has been settled law for decades that voluntary dismissals without prejudice are not final, appealable orders. *See, e.g.*, *Petet v. Equity Residential Props. Trust*, 234 F.3d 1278 (9th Cir. 2000); *Riggs v. Judicial Conference of U.S.*, 137 F. App'x. 72 (9th Cir. 2005); *Sneller v. City of Bainbridge Island*, 606 F.3d 636 (9th Cir. 2010); *Richardson v. Brother Int'l Corp.*, 400 F. App'x. 284 (9th Cir. 2010); *Muszynski v. Runnels*, No. 10-15808, 2011 WL 2601499 (9th Cir. 2011).

60(b)(6)). If a litigant could create appellate jurisdiction simply by filing a Rule 60(b) motion in response to a non-final order, *every* interlocutory ruling could be transformed into the subject of appellate review.[15]

Just as in *Aleck*, neither the Order granting Plaintiff's motion to dismiss without prejudice nor the subsequent Order denying Plaintiff's Second Motion to Reopen constitute final orders from which an appeal can be taken: "[i]t would make little sense to allow [Plaintiff] to bootstrap appellate jurisdiction solely upon the denial of an improper Rule 60(b) motion." *Aleck*, 1998 WL 790009, at *1. Because the denial of a Rule 60(b) motion cannot endow an otherwise non-final order with the finality needed to establish appellate jurisdiction, this Court lacks jurisdiction over this appeal. It should therefore be dismissed.[16]

---

[15] Plaintiff previously attempted to sow confusion by reciting the rule that an appeal from the denial of a Rule 60(b) motion does not bring up the underlying judgment for review. But that has nothing to do with the finality of rulings on Rule 60(b) motions. Rule 60(b) provides that a ruling on such a motion is reviewed independently of the underlying judgment because some Rule 60(b) motions can be brought up to "a year after the entry of the judgment or order" (Fed. R. Civ. P. 60(c)), well after the deadline for filing an appeal. Regardless, Coverall is not challenging the scope of the issues this Court may address; it is addressing whether this Court has jurisdiction to address those issues at all.

[16] Plaintiff previously asserted that jurisdiction must exist because this Court issued a ruling on his prior appeal of the denial of his Rule 60(b) motion. But the panel in the prior appeal did not address its jurisdiction. The fact that it exercised jurisdiction without analyzing its ability to do so does not create some precedent this Court must (or should) follow. *See U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001) ("The [law of the case] doctrine does not apply to issues not addressed by the appellate court."); *Hegler v. Borg*, 50 F.3d 1472, 1475

**B.      No Injustice Will Come from the Dismissal of this Appeal**

Plaintiff hyperbolically (and repeatedly) argues that this Court must exercise jurisdiction because some "injustice" will ensue if it does not. Not so. To begin with, the *only* reason this dispute has dragged on for years is because Plaintiff has engaged in procedural shenanigans in an effort to thwart arbitration and create a right of appeal that does not exist.

Had Plaintiff simply complied with the district court's original order by pursuing arbitration in good faith, or availed himself of the procedures available under the AAA's Rules, he could have raised his alleged inability to fund arbitration before the arbitrator.[17] And, if he was unable to obtain relief after invoking the alternatives the AAA makes available to those who are really indigent, he could have raised that issue with the district court when the parties filed their mandatory status report—which was due just *five days* after Plaintiff filed his demand for arbitration and long before the opening brief was filed in the First Appeal. (April 13, 2017

---

(9th Cir. 1995) ("The [law of the case] doctrine, however, applies only to issues considered and actually decided by the first court.").

[17]      Not only did Plaintiff fail to avail himself of the procedures the AAA provides to parties who cannot afford the costs of arbitration, but the evidence showed that the only reason Plaintiff's original arbitration was closed was because he advised the AAA would not pay *any* fees. (*See* District Court Dkt. 41 at Page ID 635.) Moreover, Plaintiff took this position despite the fact that the AAA had not even issued a bill. (*Id*. at Page ID 642.) In contrast, Plaintiff showed he was fully capable of paying without complaint the costs associated with litigating in the forum he *wants* to be in by paying the filing fees in the district court and the repeated docketing fees for his three appeals in this Court.

Minute Order [Dkt. 27]; SER-60.) If the district court concluded Plaintiff had in good faith attempted to arbitrate arbitrability issues but was unable to do so because of the costs, Plaintiff could then have asked the district court to lift the stay and rule on the enforceability of the delegation clause. *See Billie*, 2023 WL 2531396, at *3.

Instead, Plaintiff asked the district court to voluntarily dismiss his case without prejudice in an effort to create appellate jurisdiction over a ruling he knew was unappealable. There is no authority that supported Plaintiff's procedural gamesmanship. In the cases Plaintiff previously cited in support of his ploy, this Court permitted appeals from orders that effectively ended litigation on the merits by sending all claims to arbitration *on the merits*, leaving nothing for the courts to do but enter judgment on an arbitration award. *See, e.g., Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (reviewing order which required parties to arbitrate all of their claims on the merits and holding that "notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration"); *Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177 (9th Cir. 2001) (same). Coverall is aware of ***no case*** (and Plaintiff has never cited one) which holds that an order like the one the district court entered here, which merely enforced a delegation clause and sent only the question of arbitrability to arbitration, is final and appealable. Likewise, there is no

authority which supports the exercise of appellate jurisdiction over orders that grant requests to voluntarily dismiss cases without prejudice, and for good reason. What possible error could a trial court commit when it grants a plaintiff's motion to voluntarily dismiss his own case?

Moreover, Plaintiff's repeated incantation of the notion that he has no remedy and no forum in which to seek redress is simply false. In stark contrast to the plaintiffs in *Henson*—whose voluntary dismissal *with* prejudice actually ended their case on the merits—all Plaintiff needed to do to pursue his claims was pursue a good-faith arbitration demand or file a new complaint. *See Concha*, 62 F.3d at 1507 (a "voluntary dismissal without prejudice is not adverse to the plaintiff's interests" because the "plaintiff is free to seek an adjudication of the same issue at another time in the same or another forum"). And all Plaintiff would have "lost" by doing so was the benefit of an artificially extended limitations period that is the direct result of his procedural shenanigans. *See Henson*, 943 F.3d at 453 (district court must "evaluate the circumstances surrounding the specific motion before the court to ensure that justice is done in light of all the facts") (internal quotations and brackets omitted). Plaintiff should not be rewarded for intentionally disregarding proper and viable litigation options in favor of procedurally improper litigation options. It frankly turns

reason on its head to assert that Plaintiff should now gain the benefit of a years-long delay in litigation when that delay was caused solely by Plaintiff's own shenanigans.

But all of this is legally irrelevant. This is a court of limited jurisdiction—either it has jurisdiction, or it does not. *See*, *e.g., In re Lorillard Tobacco Co*., 370 F.3d 982, 989, n.11(9th Cir. 2004) ("[W]e cannot create jurisdiction where there is none."). For the reasons set forth above, the Court does not have jurisdiction over this appeal. "Equity is no substitute for subject matter jurisdiction. Argument of this sort is unavailing." *Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987), *overruled on other grounds*, *Partington v. Gedan*, 923 F.2d 686 (9th Cir. 1991).

## II.   **This Court's Decision In *Henson* Does Not Apply Here**

### A.   **The District Court Lacked Jurisdiction to Consider Plaintiff's Second Rule 60(b) Motion, Which Never Raised an Alleged Change in the Governing Law as Grounds for Relief**

In its Remand Order from the Second Appeal, this Court directed the district court to consider" "whether and how the *Henson* factors might apply to this case …." *Gonzalez*, 826 Fed. App'x. at *646. In *Henson*, the plaintiffs attempted to create a right to appeal the district court's denial of their motion for class certification by stipulating to the dismissal of their claims. *Henson*, 943 F.3d at 440. Because (unlike this case) that dismissal was with prejudice, then-controlling law deemed the dismissal prejudicial enough to support the exercise of appellate jurisdiction. *See*,

*e.g.*, *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1085 (9th Cir. 2010) ("[A] plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review ... has the alternative of dismissing the complaint voluntarily [with prejudice]."); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1065 (9th Cir. 2014) ("[A] dismissal of an action with prejudice, even when such dismissal is the product of a stipulation, is a sufficiently adverse—and thus appealable—final decision.").

While the appeal was pending in *Henson*, the Supreme Court decided *Baker*, which held that "plaintiffs in putative class actions cannot transform a tentative interlocutory order … into a final judgment within the meaning of § 1292 simply by dismissing their claims with prejudice." *Baker*, 582 U.S. at 41. Recognizing that this ruling put the plaintiffs in a "catch twenty-two"—"the dismissal was not a final judgment …[that] could [be] appeal[ed]… [yet that same] voluntary dismissal was treated as having finally ended the case" (*Henson*, 943 F.3d at 454)—this Court held that a review of the factors set forth in *Phelps v. Alameida*, 569 F.3d 1120, 1135-40 (9th Cir. 2009), including the previously settled state of the law, supported granting the plaintiffs relief under Rule 60(b). *Henson*, 943 F.3d at 455.

None of these principles apply here. First, as both *Henson* and the district court recognized, Rule 60(b)(6) applies only to final judgments or orders. *Id*. at 443 (under Rule 60(b), "the court may relieve a party or its legal representative from a *final* judgment, order, or proceeding") (emphasis added); *accord U.S. v. Martin*, 226

F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders"); *Corn v. Guam Coral Co.*, 318 F.2d 622, 629 (9th Cir. 1963) ("[T]he 'final' judgments, orders or proceedings referred to in the first sentence of [Rule 60(b)] ... are those which terminate the litigation in the district court subject only to the right of appeal."). This Court has already concluded that the order which Plaintiff's Rule 60(b) motion concerned—the order granting his motion to voluntarily dismiss *without* prejudice—was not a final order. That is why the district court properly concluded it likely lacked jurisdiction to address Plaintiff's motion. (I-ER-5.) *See also Black Patients Matter*, 2020 WL 1972576, at *2 (denying motion to set aside dismissal because plaintiff's "voluntary dismissal of this action as to the [Defendants] is not a final judgment or order within the meaning of Rule 60(b)"). This Court should reach the same conclusion with respect to this appeal.

Second, Plaintiff waived the right to make the claim there was some change in law because he never raised that claim before the district court. While unaddressed by the panel in the Second Appeal, Plaintiff's Second Motion to Reopen was not based on a change in the law. Instead, Plaintiff's Second Motion to Reopen was based entirely on Plaintiff's contention that he needed to proceed in court because "new material facts" "show[] that he cannot effectively vindicate his rights in arbitration." (Plaintiff's Second Motion to Reopen [Dkt. 51-1]; SER-17-19.) In other words, Plaintiff asserted that a change in the *facts* warranted re-opening the case, not

any intervening change in the *law*. His Second Motion to Reopen neither cited *Baker* nor intimated that his motion was prompted by some change in the law. (*See also* Plaintiff's Reply, Dkt. 56, at 1:6-7, where Plaintiff argued that "Contrary to Coverall's Contentions, Plaintiff Has Established ***New Facts*** That Warrant Reopening the Case.") (Emphasis added). Because Plaintiff did not raise this argument before this district court, he has waived it. *See Bowers v. Whitman*, 671 F.3d 905, 917 n.7 (9th Cir. 2012) ("[g]enerally, we will not consider an issue raised for the first time on appeal").

Third, as discussed below, there was no intervening change in governing law.

## B. There Was No Change in The Governing Law

*Henson* is premised on the impact a "change in the controlling law" has on a motion for relief under Rule 60(b). *Henson*, 943 F.3d at 444. Such a change "can— but does not always—provide a sufficient basis for granting relief under Rule 60(b)(6)." *Id.* In an effort to shoehorn this case into that narrow holding, Plaintiff asserts that, at the time he voluntarily dismissed his case without prejudice, "a long line of cases" in this Circuit stood for the proposition that courts "are free to either dismiss or stay cases after compelling arbitration." (Opening Br. at 32.) According to Plaintiff, this supposedly settled authority—which he allegedly relied on in dismissing his claims without prejudice—was unpredictably cast aside when the Supreme Court issued its decision in *Baker*, which he contends "was the foundation

for" and "at the heart of" this Court's decision in the First Appeal (Opening Br. at 32 & n.9). Neither claim has the slightest merit.

With respect to the former claim, there is no authority which supported Plaintiff's procedural gamesmanship. Although there was ample authority which allowed a district court to either dismiss or stay a suit after it granted a motion to compel arbitration, whether a district court can stay or dismiss a suit is not the issue in this appeal. The issue is whether an order that merely delegates arbitrability questions to an arbitrator is transformed into a final and appealable order when the plaintiff dismisses his claims *without* prejudice. And as noted above, there is no authority from any court which supports that view. (*See* p. 16, *supra*.) The cases which previously found that appellate jurisdiction lied following the entry of an order compelling arbitration did so only where: (i) all the parties' claims were sent to arbitration on the merits, leaving nothing for the district court to do but enter judgment confirming an award (*see*, *e.g.*, *Interactive Flight Techs.*, 249 F.3d at 1179); or (ii) the underlying suit was dismissed *with* prejudice. *See Omstead*, 594 F.3d at 1085; *accord Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (Appellate jurisdiction existed where the district court's order "directed that the dispute be resolved by arbitration and dismissed respondent's claims with prejudice" and, in so doing, "plainly disposed of the entire case on the merits and left no part of it pending before the court."). Neither situation was present in this

case. The district court ordered only that the parties arbitrate the issue of arbitrability; it did not order all of Plaintiff's claims into arbitration. Further, Plaintiff's voluntary dismissal was *without* prejudice, and as the tortured history of this case amply shows, there was far more to do in the district court than simply enter judgment at the time Plaintiff moved to voluntarily dismiss his claims without prejudice.

Plaintiff's other claim—that this Court's decision in the First Appeal was based on *Baker*—is nothing more than an attempt to distract the Court from Plaintiff's flawed strategy. Plaintiff asserts that *Baker* necessarily constituted the foundation for this Court's decision in the First Appeal because it was discussed at length during argument. "But questions and comments made by the judges during oral argument do not constitute factual determinations or ultimate rulings by the court; rather, the Court's final decision is set forth in the written opinion" it ultimately issues. *Ewalan v. Holbrook*, No. C20-01497-JLR-SKV, 2022 WL 1477557, at *33 (W.D. Wash. Mar. 28, 2022); *accord Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-CV-01846-LHK, 2017 WL 4776443, at *9 n.3 (N.D. Cal. Oct. 22, 2017) ("Although Samsung cites questions posed by U.S. Supreme Court Justices during oral argument to support its test … it is the text of the written opinion that controls.") (Koh, J.). If courts were "required to divine the intent of appellate courts on the basis of individual questions asked at oral argument, rather than the written opinions issued by the appellate courts, the task of following appellate guidance

38

would be hopelessly ambiguous." *Kludka v. Qwest Disability Plan*, No. CV–08–01806–PHX–DGC, 2012 WL 1681983, at *14 (D. Ariz. May 14, 2012).

This Court spoke with one voice when it issued it decision in the First Appeal. And that decision does not even mention *Baker*.[18] Rather, as discussed above, the decision was based entirely on (i) Section 16 of the FAA, (ii) this Court's 2014 decision in *MediVas*, and (iii) this Court's 1995 decision in *Concha*. If *Baker* somehow impacted this Court's decision to dismiss Plaintiff's appeal and changed what Plaintiff asserts was then settled law, it is safe to assume the panel would at minimum have mentioned *Baker* or quoted a phrase from it, or noted it was rejecting existing precedent, or stated it was establishing (in an unpublished opinion) a new standard or explained why it was changing then applicable law. It did none of those things. *Cf. Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 753-55 (2014) (Congress could not have intended the Religious Freedom Restoration Act ("RFRA") to extend religion-based exemptions to for-profit corporations because if Congress had intended to effect "a change so huge" in First Amendment law it would have made a "clarion statement to that effect," yet "[t]he text of RFRA makes no

---

[18] Notably, when asked by presiding Judge Rawlinson whether the Court needed to accept the reasoning in *Baker* to conclude it lacked jurisdiction, Coverall advised the Court as follows: "No. I think that reasoning is already set forth in the plain terms of the Federal Arbitration Act, which says that interlocutory rulings granting motions to compel arbitration are not appealable." (II-ER-37 at lines 16-24.)

such statement and the legislative history does not so much as mention for-profit corporations.") (Ginsburg, J., dissenting).

That the opinion in the First Appeal did not bring about the seismic change Plaintiff now contends it did is further evidenced by this Court's opinion in *Langere*, 983 F.3d 1115, which Plaintiff cites. In *Langere*, this Court addressed the following issue as a matter of first impression: "After being compelled to arbitrate by court order, can a plaintiff avoid arbitration and manufacture appellate jurisdiction simply by voluntarily dismissing his claims with prejudice?" *Id*. at 1117. Noting that this Court had "previously answered that question in the affirmative" (*id*.), this Court concluded that *Baker* controlled and that "the voluntary-dismissal device cannot be permitted to subvert the final judgment rule or a finely wrought, discretionary-appellate regime" like the one set forth in the FAA. *Id*. at 1123; *accord Sperring v. LLR, Inc.*, 995 F.3d 680, 682 (9th Cir. 2021) ("Recently, in *Langere v. Verizon Wireless Services, LLC*, we concluded that *Omstead*, which had upheld appellate jurisdiction in the compelled arbitration context, 'has been effectively overruled by the Court's decision in *Microsoft*.'") (quoting *Langere*, 983 F.3d at 1117). If, as Plaintiff claims, the decision in the First Appeal was founded on *Baker*, that fact was apparently lost not only on the panel in the First Appeal, but on every panel that has looked at this issue since. (*See* II-ER-6, where the district court notes that it "is

unconvinced that the Ninth Circuit relied on *Microsoft* or any intervening change in law to decide" the First Appeal).

## III. The District Court Did Not Abuse Its Discretion in Concluding That the *Henson* Factors Did Not Support Reconsideration

Although it properly concluded that there was no change in the law that warranted granting Plaintiff's Second Motion to Renew, the district court nonetheless analyzed the factors set forth in *Henson* and concluded, in its discretion, that those factors did not support granting that motion. (II-ER-7-10.) A review of those factors shows not only that the district court was correct, but how incongruous it is to attempt to apply a test like *Henson*—whose factors address the impact of a change in the law on *final* judgments—to an order that, like this one, is patently *not* final.

### A. None of the *Henson* Factors Overcome the Fact There Was No Change in the Law

#### 1. *The Change in the Law*

The first *Henson* factor is the "nature of the intervening change in the law." *Henson*, 943 F.3d at 446. Here, the district court correctly found that this factor weighed against Plaintiff for the simple reason that *there was no change in the law*. That is dispositive, because courts do "not need to reach the other five factors if there was no change." *Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019) (citations omitted); *see also Sperring v. LLR, Inc*., No. 21-56138, 2022 WL 3136947, at *2 (9th Cir. Aug. 5, 2022) (*"Sperring"*) ("Plaintiffs argue that other factors favor relief,

but even if so, it was reasonable for the district court to conclude that those factors do not outweigh the foreseeable nature of the dismissal for lack of jurisdiction.").

But even if there were a change in the law, Plaintiff's argument would fail. An analysis of this factor can include a review of "the extent to which the precedent upon which [the Plaintiff] relied was settled in the Circuit" and "the extent to which [the Plaintiff] should have known that the law might change in an unfavorable way." *Sperring*, 2022 WL 3136947, at *1 (quoting *Henson*, 943 F.3d at 446-47). Where a Plaintiff "should have known that the law might change in an unfavorable way, [a] district court [is] well within its discretion to conclude that [a] Plaintiff[] [is] not entitled to relief." *Id*. at *2 (quoting *Henson*, 943 F.3d at 447). This is true even if all the other factors weigh in favor of granting relief. *Id.* at *2.

Here, several factors make clear that Plaintiff should have known that his attempt to manufacture appellate jurisdiction was ill-advised from the outset. First, Coverall specifically raised in the district court that no authority supported Plaintiff's attempt to manufacture appellate jurisdiction by voluntarily dismissing his claims without prejudice. While Plaintiff failed to take note, the district court clearly did, stating that it was taking no view on whether appellate jurisdiction existed and directly advising Plaintiff of the potential consequences of his action: "[s]hould the Ninth Circuit agree with [Coverall] and find Plaintiff manufactured an appeal where no right exists, Plaintiff's claims shall remain dismissed without prejudice absent

contrary instructions or guidance from the Ninth Circuit." (May 26, 2017 Order re: Motion for Reconsideration [Dkt. 33]; SER-37.) Viewed in the light most favorable to Plaintiff, the law on this issue was at best unsettled at the time. As the district court correctly noted (I-ER-8), this not only emphasized the riskiness of Plaintiff's strategy, but cut against his claimed reliance on settled law. *Henson*, 943 F.3d at 447. Second, the Supreme Court granted certiorari in *Baker* in 2016, well before Plaintiff voluntarily dismissed his case in April of 2017. *See Microsoft Corp. v. Baker*, 577 U.S. 1099 (2016) (granting petition for a writ of certiorari). That put Plaintiff on notice that the law he allegedly relied on might change. *Henson*, 943 F.3d at 447; *accord Fed. Trade Comm'n v. AH Media Grp., LLC*, 339 F.R.D. 612, 620 (N.D. Cal. 2021) (filing of petition of certiorari evidence riskiness of dismissal strategy). And, as this Court recently noted, "[i]t is 'hardly extraordinary' that the Supreme Court arrive[d] at a 'different interpretation' from 'then-prevailing' precedent in [this] Circuit." *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023). Finally, even if there was a change in the law, that change would not have impacted the viability of the First Appeal because it has always been the law that a dismissal like this one—without prejudice—does not constitute a final, appealable order. *See Jones v. Ryan*, 733 F.3d 825, 840 (9th Cir. 2013) (doubt about whether a change in law would impact the original opinion weighs "heavily" against

granting Rule 60(b) relief). These factors amply support the district court's conclusion that this factor weighed against granting Plaintiff relief.

### 2. *Plaintiff's Diligence in Pursuing Relief*

The second factor—Plaintiff's diligence in pursuing relief—considers not only the timing of Plaintiff's efforts, but whether Plaintiff "attempt[ed] to avoid or mitigate the risk of the unfavorable change in the law" by "pursu[ing] 'all possible avenues' in advocating for his legal position, including securing a certificate of appealability, filing petitions for rehearing en banc and certiorari, and filing motions for reconsideration." *Henson*, 943 F.3d at 449 (quoting *Phelps*, 569 F.3d at 1136-37). Although the district court concluded this factor was not salient, Coverall submits it weighs heavily against granting relief.

First, to the extent Plaintiff truly believed a change in law led to the dismissal of his appeal, he waited months to raise that claim. In fact, Plaintiff did not even contend in his Second Motion to Reopen that some change in the law had occurred. He first raised that issue in August of 2019, in the brief he filed appealing the district court's denial of his Second Motion to Reopen. (Dkt. 9 in Case 19-55511.) *See Ege v. Express Messenger Systems, Inc*., No. 2:16-CV-1167-RSL, 2019 WL 6701342, at *4 (W.D. Wash. Dec. 9, 2019) (plaintiff was not diligent where he failed to timely claim a change in governing law). Second, Plaintiff had a host of options available following the district court's grant of Coverall's motion to compel, none of which

would have carried *any* risk. Plaintiff could have (i) tried to arbitrate in good faith and, if he was truly unable to afford to do so after pursuing the options available to address his claimed indigency, raised his inability with the district court in the status report that was due no later than three months after the court granted Coverall's motion, or (ii) sought reconsideration of the district court's order, or (iii) asked the district court to certify its ruling for interlocutory review under 28 U.S.C. § 1292, or (iv) filed a petition for rehearing or rehearing en banc in this Court. But he did none of these things. *Cf. Henson*, 943 F.3d at 449 (plaintiff pursued "all possible avenues" for relief before dismissing his claims). Instead, he rushed headlong to file an appeal that settled law and the plain terms of the FAA made clear he had no right to file. "[A] 'change in the law' is 'all the less extraordinary' where a party has displayed a 'lack of diligence.'" *Hewitt*, 68 F.4th at 469 (listing failing to raise the matter before the district court or file a petition for rehearing as examples of a lack of diligence).

### 3.    *Reliance Interest in the Finality of the Case*

This factor considers whether "'the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment' such that granting the motion for relief would 'undo the past, executed effects of the judgment.'" *Henson*, 943 F.3d at 450 (quoting *Phelps*, 569 F.3d at 1137-38). As the district court recognized, it is more than a bit difficult to see how

this factor applies in this case, because as this Court previously held, the Order at issue is not a final judgment.

### 4.    *Delay Between the Judgment and the Rule 60(b) Motion*

The fourth factor "examines the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Henson*, 943 F.3d at 451-52 (internal quotation marks omitted) (quoting *Phelps*, 569 F.3d at 1138). In assessing this factor, the courts "consider the length of time between when the original judgment ... became final *after* appeal, and the time at which a party filed its motion for Rule 60(b)(6) relief." *Id*. (internal quotation marks omitted). While the district court concluded this factor favored Plaintiff because he timely filed his Second Motion to Reopen following the dismissal of the First Appeal (I-ER-8), Coverall submits this conclusion overlooks the fact that Plaintiff's motion did not even raise any alleged change in the law. That argument was first invented on appeal, after the district court denied Plaintiff's Second Motion to Reopen, which claimed only that a change in *facts* warranted relief under Rule 60(b). Under the circumstances, this factor should be deemed neutral.

### 5.    *The Relationship Between the Original Judgment and the Change in the Law*

"The fifth *Phelps* factor looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law." *Henson*, 943 F.3d at 452 (internal quotation marks

and citations omitted). "Where a court rested its judgment on a basis only marginally altered by later changes in relevant law, reopening a [judgment] is disfavored." *Bynoe v. Baca*, 966 F.3d 972, 986 (9th Cir. 2020).

Much as with the first factor, Plaintiff claims the district court abused its discretion in concluding there was no close connection here because *Baker* did not factor into this Court's decision to dismiss the First Appeal. But this oft-repeated refrain finds no more support now than it did the numerous other times Plaintiff raised it. The decision on the First Appeal did not mention *Baker* and did not rely on its reasoning. *Cf. Henson*, 943 F.3d at 452 (holding there was "a close connection between the original judgment and *Microsoft*, because the voluntary dismissal was explicitly predicated on the law that *Microsoft* changed"). In fact, this Court did not apply *Baker's* reasoning to the arbitration context until 2020—a year after the First Appeal was dismissed—when it issued *Langere*.[19] The district court's conclusion that the requisite close connection was lacking (I-ER-9) does not constitute an abuse of discretion.

---

[19]   Plaintiff notes that Coverall argued that, in a 2017 case (*Bynum v. Maplebear Inc.*, 698 F. App'x 23 (2d Cir. 2017)) the Second Circuit relied on *Baker's* reasoning in concluding that a party could not create appellate jurisdiction over an order compelling arbitration by voluntarily dismissing its claims with prejudice. (Opening Br. at 52-3.) That is true, but this Circuit did not adopt that view until *Langere*.

### 6. *Concerns of Comity*

The district court found, and the parties agree, that this factor has no relevance here. *See Henson*, 943 F.3d at 453.

### B. **The District Court Properly Concluded That No Additional Considerations Supported Granting Plaintiff's Motion**

In *Henson*, this Court emphasized that the *Phelps* factors "were not intended to be a rigid or exhaustive list," and that a "court's ultimate charge in evaluating a Rule 60(b) motion remains to 'intensively balance' all the relevant factors." *Henson*, 943 F.3d at 446. Repeating his all-too-familiar refrain, Plaintiff contends the district court abused its discretion in concluding that these factors did not support relief because its order was a "final dismissal" which left Plaintiff "with *no remedy* and *no forum*" in which to seek redress. (Opening Br. at 2, 56; emphasis in original.) But as Franklin Roosevelt once said, "Repetition does not transform a lie into a truth." And here, no matter how many times Plaintiff asserts otherwise, there is absolutely nothing "final" about the predicament in which Plaintiff finds himself.

In *Henson*, the plaintiffs faced a real Catch-22, as they had voluntarily dismissed their claims *with* prejudice and therefore could not go back to court. That is not this case. In fact, as much as he tries to misstate the facts, Plaintiff has lost nothing by his ongoing efforts to obtain review of a ruling that this Court and the Supreme Court has made clear is not reviewable. As this Court already held in the First Appeal, the district court's Order granting Plaintiff's motion to voluntarily

dismissal his Complaint *without* prejudice was *not* final. Therefore, it was "not adverse to the plaintiff's interests." *Concha,* 62 F.3d at 1507. "*The plaintiff is free to seek an adjudication of the same issue at another time in the same or another forum*." *Id*. (emphasis added). All Plaintiff needs to do to have "a forum" is file a new suit. In the alternative, he could file a demand for arbitration and make a sincere effort to arbitrate (by seeking fee waivers or the services of a pro bono arbitrator if necessary) in contrast to the sham effort he previously undertook.[20] Either way, all Plaintiff will "lose" by doing so is the benefit of an artificially extended limitations period in this case that is the direct result of his procedural shenanigans. *See Henson*, 943 F.3d at 453 (district court must "evaluate the circumstances surrounding the specific motion before the court to ensure that justice is done in light of all the facts") (internal quotations and brackets omitted). And given that he has forced Coverall to brief three appeals as part of his ongoing, transparent effort to convince this Court to review a ruling that Congress concluded is not reviewable, that is hardly something this Court should be concerned about.

---

[20] If, after availing himself of these options, Plaintiff was unable to afford the costs of arbitration, Coverall would advance those costs, as it has done in every other case where a proper showing has been made.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's appeal for lack of jurisdiction or, in the alternative, affirm the district court's Order denying Plaintiff's motion for relief under Rule 60(b).

Dated: June 21, 2023

**COVERALL NORTH AMERICA, INC.**

By: /s Norman M. Leon

Norman M. Leon
**DLA Piper LLP (US)**
444 West Lake Street
Chicago, Illinois 60606-0089

Julie A. Dunne
**DLA Piper LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133

*Attorneys for Defendant-Appellee
Coverall North America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Court Rule 32-1(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,543 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using fourteen-point Times New Roman.

/s Norman M. Leon
Norman M. Leon

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Defendant-Appellee Coverall North America, Inc. states that it is not aware of any related cases pending in this court.

Dated: June 21, 2023

/s Norman M. Leon
Norman M. Leon

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendant-Appellee Coverall North America, Inc.'s Answering Brief was filed with the Clerk of the Court by using the CM/ECF system, which will automatically send a notice of this electronic filing to all counsel of record.

Dated: June 21, 2023

/s Norman M. Leon

Norman M. Leon
